UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60313-BLOOM/Valle

XYZ CORPORATION,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Entry of Preliminary Injunction, ECF No. [7] ("Motion"). In the Motion, Plaintiffs Roger Taylor, John Taylor, Simon Le Bon, and Nicholas Rhodes (collectively, "Plaintiffs") move for entry of a preliminary injunction against Defendants Individuals, Partnerships, and Unincorporated Associations identified in the attached Revised Schedule A (collectively, "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651(a). *See id.*

The Court convened a hearing on March 3, 2022, at which only counsel for Plaintiffs was present and available to present evidence supporting the Motion. Because Plaintiffs have satisfied the requirement for the issuance of a preliminary injunction, the Court grants the Motion as to all Defendants identified in the attached Revised Schedule A.

1

## I. FACTUAL BACKGROUND[1]

Plaintiffs are the owners of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office ("Duran Duran Standard Character Mark"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| DURAN DURAN | 5,568,570 | 09/25/2018 | IC 003: Perfumes; aftershaves; aftershave lotions; aftershave balms; fragrances; air perfuming oils and preparations, namely, scented oils; cosmetics; essential oils; dentifrices; hair lotions and preparations for care of and styling the hair; toiletries, namely, non-medicated toiletry preparations; shampoos; cosmetic soaps; creams and lotions for the skin; beauty products and preparations, namely, beauty masks; beauty treatments and facial packs, namely, facial beauty masks; sun-tanning preparations; sun care skin preparations, namely, sunscreen creams; sun block preparations; self-tanning preparations; self-tanning preparations, namely, self-tanning creams, lotions, sprays, mists and wipes; pre-moistened cosmetic facial wipes; make-up removal wipes, namely, wipes impregnated with a cleaning preparation; cotton wool for cosmetic use; pre-moistened cosmetic tissues; emery paper; abrasive boards, namely, abrasive strips; hand masks for skin care and nail care preparations; laundry bleaching preparations and other substance for laundry use, namely, laundry detergent |

---

[1] The factual background is taken from Plaintiffs' Amended Complaint, Motion, and supporting Declarations submitted by Plaintiffs.

| **Trademark** | **Registration Number** | **Registration Date** | **Class / Goods** |
|---|---|---|---|
| | | | IC 006: Metal name badges; metal cotter pins; metal keys for locks, metal key blanks; identification tags of metal; metal locks and holiday ornaments of common metal; trophies of common metal; bronze recognition plaques; monuments, statues and statuettes of common metal; metal boxes; metal tool boxes; all of the above made wholly or principally of metal

IC 009: Downloadable musical sound recordings; musical video recordings; prerecorded audio tapes featuring music; prerecorded audio cassettes featuring music; prerecorded compact discs featuring music; prerecorded CDs featuring music; motion picture films about a musical group; blank video cassettes; video recorders; blank CD-ROMs for sound or video recording; video game software; games software adapted for use with television receivers; computer games software; computer game software; video cameras; cameras; photographic and cinematographic apparatus and instruments, namely, digital cameras; apparatus for recording, transmission, reproduction of sound and images; batteries; magnetically encoded gift cards; magnetically encoded identity cards, credit cards, and debit cards; spectacles, spectacle cases, sunglasses; video game software; mouse pads; computer screen saver software; electronic downloadable publications, typically supplied on-line from databases or from facilities provided on the Internet, namely, magazines in the |

| **Trademark** | **Registration Number** | **Registration Date** | **Class / Goods** |
|---|---|---|---|
| | | | field of music; DVDs featuring music videos; headphones; stereo headphones; audio speakers; hologram apparatus; magnetically encoded credit cards with holograms; digital downloadable music files from the Internet; digital physical instructional information downloadable from the Internet, namely, video recordings featuring physical fitness routines; electronic downloadable publications, namely, newsletters in the field of music; video game application software; downloadable music sound recordings; downloadable video recordings featuring music instruction; software for processing images, namely, providing emoticons<br><br>IC 014: Jewellery; precious stones and precious metals; costume jewellery; badges of precious metal; brooches; cufflinks; tie pins; tie clips; earrings; key rings; pendants; horological and chronometric instruments including watches and clocks; decorative key fobs; lapel pins; rings; earrings; cuff links; bracelets; bracelets made of leather; bracelets made of metal; bracelets of precious metal; cuff links made of precious metals with semi-precious stones; bracelets made of precious metals with semi-precious stones; bracelets with semi-precious stones; bracelets with metal; jewellery chains; necklaces; metal key rings, metal key chains, trophies of precious metal, wall plaques made of precious metal; monuments, statues and statuettes of precious metal |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | IC 016: Printed matter, namely, newspapers, periodical publications, magazines, and books in the field of music; photographs, pictures, prints; posters; greeting cards; postcards; notepads; address books; scrapbooks; folders; catalogues in the field of music; printed tickets; calendars; photographs albums; diaries; booklets in the field of music; postage stamps; covers for postage stamps, namely, sleeves for holding and protecting postage stamps; stamp albums; stickers; car stickers; decalcomanias; blank cards; cardboard signboards; stationery, pens, pencils, erasers, pencil sharpeners, pencil cases, drawing rulers, boxes for pens, book markers; drawing materials for blackboards; artists' materials, namely, pens; printed instructional and teaching materials in the field of music; gift bags; carrier bags, namely, merchandise bags; envelopes; blackboards; charts for displaying data about human height; song books; printed sheet music; cheque book holders<br><br>IC 021: Mugs; aluminium bakeware; Aluminium cookware, namely, pots, pans, roasting pans, frying pans and skillets; Bakeware; Baking dishes; Baking dishes made of earthenware; Baking dishes made of glass; Baking mats; Baking dishes made of porcelain; Baking tins, namely, cake tins, pie tins, muffin tins; Beer jugs; Beer mugs; Beverage glassware; Bowls; Bread boards; Bread boxes; Cake moulds; Cake brushes; Candy boxes; Cheese graters; Chopsticks; sushi rolling mat, bento boxes; |

| **Trademark** | **Registration Number** | **Registration Date** | **Class / Goods** |
|---|---|---|---|
| | | | Cocktail shakers; Coffee cups; Colanders; hand-operated Coffee grinders; Cookery moulds; Cooking pot sets; Cooking utensils, namely, pot and pan scrapers, rolling pins, spatulas, turners, whisks, graters, tongs and sieves, mixing spoons, slotted spoons, basting spoons; Corkscrews; Cups and mugs; Decanters; Dishware; Earthenware, namely, dishes, drinking cups and saucers, mugs, bowls, serving bowls, sugar bowls, jars for jams and jellies; Egg cups; Egg poachers; Ice cube trays; Jugs; Lunchboxes; Pepper mills, hand-operated; Pepper pots; Salt mills, hand-operated; Salad spinners; Sandwich boxes; Hand-operated sushi rolling equipment, namely, bamboo sushi rolling mat; Tableware, namely, cutlery trays, dinnerware, plates, dishes, bowls, serving bowls, cups and saucers, drinking cups and saucers; cookware, namely, steamers, roasting pans, pots and pans, and cookware for use in microwave ovens; containers for household use; Utensil jars; paper cups; paper plates; woks; Picnic crockery, namely, dishes, mugs, bowls, drinking cups and saucers, serving bowls, sugar bowls; Picnic boxes, namely, picnic baskets sold empty; Fitted picnic baskets; metal money boxes; all for use in promoting and marketing a musical band<br><br>IC 025: Clothing, namely, t-shirts; footwear and headwear; articles of outer clothing, namely, coats; articles of underclothing, namely, underwear; articles of sports clothing, namely, jerseys; scarves; |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | dressing gowns; boxer shorts; socks; t-shirts, hats and caps being headwear, jackets, pyjamas, slippers; wristbands as clothing, headbands, ties as clothing; articles of clothing, namely, footwear and headwear for babies and toddlers; sporting clothes, namely, athletic uniforms; sweatshirts; hooded sweatshirts; shirts, pullovers, skirts, dresses, trousers, coats, belts, gloves, neckties, swimsuits; athletic shoes; dance shoes; leather shoes; high-heeled shoes; sandals and beach shoes; baseball caps; Masquerade costumes for hire, including fancy dress costumes; waterproof clothing, namely, raincoats; all for use in promoting and marketing a musical band<br><br>IC 041: Entertainment services, namely, live performances by a musical band; sound recording and video entertainment services, namely, music video production; presentation of musical performances, namely, concert, musical and video performances; television and radio entertainment services, namely, production of television and radio programs; entertainment services by stage production, namely, cabarets; production of video and sound recordings; presentation of musical performances; theatre production, namely, performance of shows, musical shows, and concerts; production of videos, multimedia videos and radio and television programmes; recording studio services; film, video and television studio services; multimedia |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | production services, namely, audio, film, video and television recording services; publishing of reviews; music publishing services; film distribution services; educational services, namely, arranging and conducting of seminars, conferences and exhibitions in the field of music; publication of books, magazines and musical texts; entertainment services, namely, providing non-downloadable prerecorded digital music via the Internet; entertainment services, namely, providing non-downloadable prerecorded sound recordings in the nature of music via the Internet; entertainment services, namely, providing non-downloadable prerecorded video recordings in the nature of music videos via the Internet; Entertainment services, namely, providing non-downloadable playback of music sound and video recordings via Internet; organizing and presenting displays of entertainment relating to style and fashion, namely, organizing fashion shows for entertainment purposes; organizing and presenting displays of entertainment relating to music, namely, organizing exhibitions of musical entertainment |

Plaintiffs are also the owners of the following logos:





FUTURE PAST

DURAN DURAN
FUTURE PAST

("Duran Duran Logos"). Collectively the Duran Duran Standard Character Mark and Duran Duran Logos are referred to herein as the "Duran Duran Marks."

The Duran Duran Marks are used in connection with the design, marketing, and distribution of various high-quality goods and merchandise, including but not limited to T-shirts, outerwear, face masks, dog tags, mugs, stickers, patches and sunglasses. *See* ECF No. [7-2] ¶ 5.

The Duran Duran Marks are a symbol of Plaintiffs' quality, reputation, and goodwill and the Duran Duran Marks have never been abandoned. *Id.* ¶¶ 5-9. Moreover, Plaintiffs have expended substantial time, money, and other resources developing, advertising, and otherwise promoting their trademark. *Id.* ¶ 7.

Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on the attached Revised Schedule A ("Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the Duran Duran Marks. *Se id.* ¶ 10; ECF No. [7-3] ¶ 4.

Although each of the Defendants may not copy and infringe each category of goods protected under the Duran Duran Marks, Plaintiffs have submitted sufficient evidence showing that each of the Defendants has infringed the Duran Duran Marks. *See* ECF Nos. [7-3] ¶ 4, [7-1]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Duran Duran Marks. *See* ECF No. [7-2] ¶ 10.

Plaintiffs investigated the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded and protected products by Defendants. *See id.* ¶¶ 10-13; ECF No. [7-3] ¶ 5. Plaintiffs accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of the Duran Duran Marks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See* ECF No. [7-2] ¶ 12. Plaintiffs conducted a review and visually inspected the Blind Guardian branded items for which orders were initiated by Plaintiffs' third party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of Plaintiffs' products. *See id* at ¶ 13.

## II.     LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

**III.    CONCLUSIONS**

The declarations Plaintiffs submitted in support of their Motion support the following conclusions of law:

A.    Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Duran Duran Marks.

B.    Because of the infringement of the Duran Duran Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiffs' Amended Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers in view of the following considerations:

1.    Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2.    There is good cause to believe that more infringing products bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

C.    The balance of potential harm to Defendants in restraining their trade in infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to

Plaintiffs, their reputation, and their goodwill as manufacturers and distributors of quality products if such relief is not issued.

D. The public interest favors issuance of a preliminary injunction to protect Plaintiffs' trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing infringements of the Duran Duran Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the infringing business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. [7], is **GRANTED**, under the terms set forth below:

(1) Each of the Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Duran Duran Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using the Duran Duran Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Duran Duran Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

(2) Each of the Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Duran Duran Marks, confusingly similar trademarks, on or in connection with all Internet based e-commerce stores and websites owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3) Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4) Upon receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(5) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6) This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Duran Duran Marks at issue in this action and/or unfairly competing with Plaintiffs.

Case No. 22-cv-60313-BLOOM/Valle

(7) This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

(8) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 3, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record