UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60313-BLOOM/Valle

XYZ CORPORATION,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

     Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs ROGER TAYLOR, JOHN TAYLOR, SIMON LE BON, and NICHOLAS RHODES' (collectively, "Plaintiffs") Motion for Entry of Final Default Judgment, ECF No. [35] ("Motion"), filed on April 13, 2022. A Clerk's Default was entered against Defendants, ECF No. [33], on April 1, 2022, as Defendants failed to appear, answer, or otherwise plead to the Amended Complaint filed on March 1, 2022 despite having been served. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is granted.

## I.    INTRODUCTION

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; and common law trademark infringement. The Amended Complaint alleges that Defendants are advertising, using, selling, promoting, and distributing, counterfeits, and confusingly similar imitations of Plaintiffs' registered trademarks

within the Southern District of Florida by operating Defendants' Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" attached to this Order and to Plaintiffs' Motion for Entry of Final Default Judgment. *See* ECF No. [35-1].

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their right to determine the manner in which their trademarks are presented to consumers; (2) deceived the public as to Plaintiffs' sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (3) wrongfully traded and capitalized on Plaintiffs' reputation and goodwill and the commercial value of Plaintiffs' trademarks; and (4) wrongfully damaged Plaintiffs' ability to market their branded products and educate consumers about their brand via the Internet in a free and fair marketplace.

In their Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement. Plaintiffs further request that the Court (1) enjoin Defendants unlawful use of Plaintiffs' trademarks; (2) award Plaintiffs damages; and (3) instruct any third party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to Plaintiffs in partial satisfaction of the award of damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc.*

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order.

*v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default. . . ."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for default judgment to be entered in favor of Plaintiffs.

## II.    FACTUAL BACKGROUND[2]

Plaintiffs are the registered owners of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, "Duran Duran Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| DURAN DURAN | 5,568,570 | 09/25/2018 | IC 003: Perfumes; aftershaves; aftershave lotions; aftershave balms; fragrances; air perfuming oils and preparations, namely, scented oils; cosmetics; essential oils; dentifrices; hair lotions and preparations for care of and styling the hair; toiletries, namely, non-medicated toiletry preparations; shampoos; cosmetic soaps; creams and lotions for the skin; beauty products and preparations, namely, beauty masks; beauty treatments and facial packs, namely, facial beauty masks; sun-tanning preparations; sun care skin preparations, namely, sunscreen |

---

[2] The factual background is taken from Plaintiffs' Amended Complaint, ECF No. [18], Plaintiffs' Motion for Entry of Final Default Judgment, ECF No. [35], and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | creams; sun block preparations; self-tanning preparations; self-tanning preparations, namely, self-tanning creams, lotions, sprays, mists and wipes; pre-moistened cosmetic facial wipes; make-up removal wipes, namely, wipes impregnated with a cleaning preparation; cotton wool for cosmetic use; pre-moistened cosmetic tissues; emery paper; abrasive boards, namely, abrasive strips; hand masks for skin care and nail care preparations; laundry bleaching preparations and other substance for laundry use, namely, laundry detergent<br><br>IC 006: Metal name badges; metal cotter pins; metal keys for locks, metal key blanks; identification tags of metal; metal locks and holiday ornaments of common metal; trophies of common metal; bronze recognition plaques; monuments, statues and statuettes of common metal; metal boxes; metal tool boxes; all of the above made wholly or principally of metal<br><br>IC 009: Downloadable musical sound recordings; musical video recordings; prerecorded audio tapes featuring music; prerecorded audio cassettes featuring music; prerecorded compact discs featuring music; prerecorded CDs featuring music; motion picture films about a musical group; blank video cassettes; video recorders; blank CD-ROMs for sound or video recording; video game software; games software adapted for use with television receivers; computer games software; computer game software; video |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | cameras; cameras; photographic and cinematographic apparatus and instruments, namely, digital cameras; apparatus for recording, transmission, reproduction of sound and images; batteries; magnetically encoded gift cards; magnetically encoded identity cards, credit cards, and debit cards; spectacles, spectacle cases, sunglasses; video game software; mouse pads; computer screen saver software; electronic downloadable publications, typically supplied on-line from databases or from facilities provided on the Internet, namely, magazines in the field of music; DVDs featuring music videos; headphones; stereo headphones; audio speakers; hologram apparatus; magnetically encoded credit cards with holograms; digital downloadable music files from the Internet; digital physical instructional information downloadable from the Internet, namely, video recordings featuring physical fitness routines; electronic downloadable publications, namely, newsletters in the field of music; video game application software; downloadable music sound recordings; downloadable video recordings featuring music instruction; software for processing images, namely, providing emoticons<br><br>IC 014: Jewellery; precious stones and precious metals; costume jewellery; badges of precious metal; brooches; cufflinks; tie pins; tie clips; earrings; key rings; pendants; horological and chronometric instruments including watches and clocks; decorative key fobs; lapel |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | pins; rings; earrings; cuff links; bracelets; bracelets made of leather; bracelets made of metal; bracelets of precious metal; cuff links made of precious metals with semi-precious stones; bracelets made of precious metals with semi-precious stones; bracelets with semi-precious stones; bracelets with metal; jewellery chains; necklaces; metal key rings, metal key chains, trophies of precious metal, wall plaques made of precious metal; monuments, statues and statuettes of precious metal<br><br>IC 016: Printed matter, namely, newspapers, periodical publications, magazines, and books in the field of music; photographs, pictures, prints; posters; greeting cards; postcards; notepads; address books; scrapbooks; folders; catalogues in the field of music; printed tickets; calendars; photographs albums; diaries; booklets in the field of music; postage stamps; covers for postage stamps, namely, sleeves for holding and protecting postage stamps; stamp albums; stickers; car stickers; decalcomanias; blank cards; cardboard signboards; stationery, pens, pencils, erasers, pencil sharpeners, pencil cases, drawing rulers, boxes for pens, book markers; drawing materials for blackboards; artists' materials, namely, pens; printed instructional and teaching materials in the field of music; gift bags; carrier bags, namely, merchandise bags; envelopes; blackboards; charts for displaying data about human height; song |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | books; printed sheet music; cheque book holders<br><br>IC 021: Mugs; aluminium bakeware; Aluminium cookware, namely, pots, pans, roasting pans, frying pans and skillets; Bakeware; Baking dishes; Baking dishes made of earthenware; Baking dishes made of glass; Baking mats; Baking dishes made of porcelain; Baking tins, namely, cake tins, pie tins, muffin tins; Beer jugs; Beer mugs; Beverage glassware; Bowls; Bread boards; Bread boxes; Cake moulds; Cake brushes; Candy boxes; Cheese graters; Chopsticks; sushi rolling mat, bento boxes; Cocktail shakers; Coffee cups; Colanders; hand-operated Coffee grinders; Cookery moulds; Cooking pot sets; Cooking utensils, namely, pot and pan scrapers, rolling pins, spatulas, turners, whisks, graters, tongs and sieves, mixing spoons, slotted spoons, basting spoons; Corkscrews; Cups and mugs; Decanters; Dishware; Earthenware, namely, dishes, drinking cups and saucers, mugs, bowls, serving bowls, sugar bowls, jars for jams and jellies; Egg cups; Egg poachers; Ice cube trays; Jugs; Lunchboxes; Pepper mills, hand-operated; Pepper pots; Salt mills, hand-operated; Salad spinners; Sandwich boxes; Hand-operated sushi rolling equipment, namely, bamboo sushi rolling mat; Tableware, namely, cutlery trays, dinnerware, plates, dishes, bowls, serving bowls, cups and saucers, drinking cups and saucers; cookware, namely, steamers, roasting pans, pots and pans, and cookware for use in microwave ovens; containers for |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | household use; Utensil jars; paper cups; paper plates; woks; Picnic crockery, namely, dishes, mugs, bowls, drinking cups and saucers, serving bowls, sugar bowls; Picnic boxes, namely, picnic baskets sold empty; Fitted picnic baskets; metal money boxes; all for use in promoting and marketing a musical band<br><br>IC 025: Clothing, namely, t-shirts; footwear and headwear; articles of outer clothing, namely, coats; articles of underclothing, namely, underwear; articles of sports clothing, namely, jerseys; scarves; dressing gowns; boxer shorts; socks; t-shirts, hats and caps being headwear, jackets, pyjamas, slippers; wristbands as clothing, headbands, ties as clothing; articles of clothing, namely, footwear and headwear for babies and toddlers; sporting clothes, namely, athletic uniforms; sweatshirts; hooded sweatshirts; shirts, pullovers, skirts, dresses, trousers, coats, belts, gloves, neckties, swimsuits; athletic shoes; dance shoes; leather shoes; high-heeled shoes; sandals and beach shoes; baseball caps; Masquerade costumes for hire, including fancy dress costumes; waterproof clothing, namely, raincoats; all for use in promoting and marketing a musical band<br><br>IC 041: Entertainment services, namely, live performances by a musical band; sound recording and video entertainment services, namely, music video production; presentation of musical |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | performances, namely, concert, musical and video performances; television and radio entertainment services, namely, production of television and radio programs; entertainment services by stage production, namely, cabarets; production of video and sound recordings; presentation of musical performances; theatre production, namely, performance of shows, musical shows, and concerts; production of videos, multimedia videos and radio and television programmes; recording studio services; film, video and television studio services; multimedia production services, namely, audio, film, video and television recording services; publishing of reviews; music publishing services; film distribution services; educational services, namely, arranging and conducting of seminars, conferences and exhibitions in the field of music; publication of books, magazines and musical texts; entertainment services, namely, providing non-downloadable prerecorded digital music via the Internet; entertainment services, namely, providing non-downloadable prerecorded sound recordings in the nature of music via the Internet; entertainment services, namely, providing non-downloadable prerecorded video recordings in the nature of music videos via the Internet; Entertainment services, namely, providing non-downloadable playback of music sound and video recordings via Internet; organizing and presenting displays of entertainment relating to style and |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | fashion, namely, organizing fashion shows for entertainment purposes; organizing and presenting displays of entertainment relating to music, namely, organizing exhibitions of musical entertainment |

*See* ECF No. [18]. The Duran Duran Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above. *See* ECF No. [7-2] at 4. Plaintiffs have exclusive rights in and to the Duran Duran Marks. *Id*.

Although each Defendant may not copy and infringe each of Plaintiffs' trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed the Duran Duran Marks for at least at least one category of goods. *See* ECF Nos. [7-2] at 10-13, [7-3].[3]  Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the Duran Duran Marks. *See* ECF No. [7-2] at 10-13.

As part of their ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiffs hired a third party investigatory to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs. The third party investigator initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of the Duran Duran Marks, and requested each product to be shipped to an address in the Southern District of Florida. Accordingly, Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United

---

[3] Evidence of each Defendant's infringement was attached as Exhibit 1 to the Declaration of Richard Guerra in Support of Plaintiffs' Motion for Entry of Final Default Judgment. *See* ECF Nos. [36], [37], [38], [39].

States. *See* ECF No. [7-3] at 4. A representative for Plaintiffs personally analyzed the Duran Duran branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Duran Duran Marks, and concluded the products were non-genuine, unauthorized Duran Duran products. *See* ECF No. [7-2] at 13.

## III.  ANALYSIS

### A.  Claims

#### 1.  Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

#### 2.  False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any

combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3.    Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)"; *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B.    Liability

The well-pled factual allegations of Plaintiffs' Amended Complaint properly allege the

elements for each of the claims described above. *See* ECF No. [14]. Moreover, the factual allegations in Plaintiffs' Amended Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.     Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on

each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [18]. Further, the Amended Complaint alleges, and the unauthorized Duran Duran products sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiffs' genuine Duran Duran products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiffs' genuine products. *See id*. "The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff." *See* ECF No. [18] at 29.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiffs cannot control the quality of what appears to be their Duran Duran products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which are illegal

acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

### D.      Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $2,000,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it

may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a Plaintiffs' inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-*23 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is

sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, clearly establish Defendants intentionally copied the Duran Duran Marks for the purpose of deriving the benefit of Plaintiffs' world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact counterfeits of at least one of the Duran Duran Marks. *See* ECF No. [18]. Based on the above considerations, Plaintiffs suggest the Court award statutory damages of $100,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.    Damages for False Designation of Origin

Plaintiffs' Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the

Case No. 22-cv-60313-BLOOM/Valle

requested equitable relief.

**F.    Damages for Common Law Unfair Competition and Trademark Infringement**

Plaintiffs' Amended Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

**IV.    CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [35]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 15, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record